# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARMONI MASUD JOHNSON,

    Plaintiff

v.

    3:15-CV-1232
    (JUDGE MARIANI)

SERGEANT MICHAEL ROSKOSCI,

    Defendant

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On June 23, 2015, Plaintiff Armoni Johnson, an inmate confined in the State Correctional Institution, located in Dallas, Pennsylvania, ("SCI-Dallas"), filed the above-captioned civil rights action against Defendant Michael Roskosci pursuant to 42 U.S.C. § 1983. (Doc. 1). On September 2, 2016, District Court Judge William Nealon granted in part and denied in part Defendant's motion to dismiss. (Doc. 29). Plaintiff subsequently filed an amended complaint (Doc. 32) which Defendant again moved to dismiss (Doc. 33). In July, 2017, the Court granted in part and denied in part Defendant's motion. (Doc. 36). Specifically, Judge Nealon granted Defendant's motion to dismiss "any purported First Amendment retaliation claim, Eighth Amendment harassment claim, and Fourteenth Amendment discrimination claim", but denied the motion to dismiss Plaintiff's First Amendment free exercise claim. (*Id.*; *see also*, Doc. 35). The action was thereafter re-assigned to the undersigned and Magistrate Judge Martin Carlson.

On January 26, 2018, Defendant filed a motion for summary judgment (Doc. 46), supporting brief (Doc. 48), and statement of material facts in support of his motion (Doc. 47). In response, Plaintiff filed documents each entitled "request for summary judgment" (Docs. 49, 50) on February 7 and February 14, 2018.

On April 14, 2018, Magistrate Judge Carlson issued a Report and Recommendation ("R&R") (Doc. 52) recommending that this Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's "requests" for summary judgment, which he explained were "in effect, responses in opposition to th[e] defense summary judgment motion" (*id.* at 2). Plaintiff Johnson filed Objections (Doc. 57) to the R&R.

For the reasons that follow, upon *de novo* review, the Court will adopt the pending R&R, grant Defendant's motion for summary judgment, and, to the extent Plaintiff's "requests" can be deemed motions for summary judgment, deny those motions.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection

is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, Plaintiff filed a lengthy Objection, and included as attachments a "Special Notice of Attention" as well as several exhibits. (Doc. 57). Upon review of Plaintiff's submission, it appears that Plaintiff objects to the majority of the Magistrate Judge's R&R.

Broadly stated, a significant portion of Plaintiff's brief setting forth his objections disputes the Magistrate Judge's findings that Plaintiff failed to raise any genuine disputes with respect to the material facts in this action and repeatedly directs the Court to prior documents, unrelated to the Defendant's motion for summary judgment or Plaintiff's "requests" for summary judgment, which Plaintiff contends demonstrate that material disputes of fact exist.[1] Nonetheless, despite these assertions, the R&R correctly explains that a party opposing summary judgment must submit a statement of material facts responding to the numbered paragraphs set forth in the movant's statement and that failure to do so will result in those facts being deemed admitted. (Doc. 52, at 8). As the Magistrate Judge explained,

> [a] party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

(*Id.* at 9).

---

[1] Although arguing that he answered Defendant's requests for admission, without explanation as to why, Plaintiff also defends any lack of response on the bases that Defendant's questions "demonstrat[e] . . . just how arbitrary jail policies can be. . ." and that certain questions were "arbitrary" (Doc. 57, at 14, 15).

3

Furthermore, although Plaintiff argues that the Magistrate Judge erred when finding that he did not submit a response or counterstatement of facts to Defendant's statement of facts (Doc. 57, at 10), this argument is without merit. According to Plaintiff, his submission of January 1, 2018 (docketed on January 4, 2018), "represents a counter statement in short." (*Id.*). However, because Defendant filed his statement of material facts on January 26, 2018 (Doc. 47), it cannot be said that Plaintiff's January 1, 2018, document was a response to a subsequently filed document. The Magistrate Judge thus did not err in finding that Plaintiff failed to respond to the statement of facts.

Notwithstanding the above-findings, the Court acknowledges that this is a difficult case. Johnson, a *pro se* prisoner who does not write with clarity, faces a Report and Recommendation recommending the entry of summary judgment in favor of the defendant largely because Johnson either chose to ignore what is required of him by the Federal Rules of Civil Procedure or because he lacked the ability to understand what was required of him by those Rules, and the consequences of failing to comply with them. As Magistrate Judge Carlson aptly noted, "[t]his *pro se* prisoner lawsuit . . . underscores the cardinal importance of a *pro se* plaintiff's compliance with his discovery obligations." (Doc. 52, at 1). The Court echoes this sentiment, as well as further underscoring the importance of compliance with the obligations set forth in both the Federal Rules of Civil Procedure and M.D. Pa. Local Rules with respect to motions for summary judgment and the proper responses thereto. However, on the other hand, embedded in Johnson's lengthy objections

4

are statements that, although unsupported by the record and in many ways conclusory in nature, would arguably provide the basis for a legitimate claim of discriminatory enforcement of an otherwise facially valid rule requiring the confiscation of contraband by prison officials.

Despite this Court's reservations, to grant Plaintiff relief in the form of sustaining his objections would be to excuse repeated failures to comply with the governing Rules of Civil Procedure which apply to all litigants and to which we have always required at least an attempt at good faith adherence. In so holding, we do not stand on a pedantic desire for the enforcement of, and adherence to, the rules. Instead, we require pre-trial rules be adhered to because it is only through such action that parties to litigation are afforded the opportunity to put forth the facts and evidence in support of their respective positions, and in so doing, permit the Court to determine whether any genuine disputes of material fact exist for trial. Such adherence further serves to ensure the orderly advancement of the action, and a timely resolution of any claims.

Here, Plaintiff had ample opportunity to request and obtain any discovery he deemed necessary, and was in turn under an obligation to respond to any discovery requests by the defendant. This action was filed in June, 2015, and Defendants did not move for summary judgment until January of 2018. Plaintiff was thus afforded approximately two-and-a-half years to complete any necessary discovery and obtain any statements, affidavits, or other documents which he deemed necessary to establish his claim. Additionally, the Court notes

5

that when Defendant moved for an extension of time to complete discovery in December, 2017 (Doc. 42), Plaintiff objected on the basis that this request was "only a tactical strategy in order to attempt to evade prosecution in this civil action" (Doc. 45). To the extent that Plaintiff may now assert that he is entitled to further discovery or that he had insufficient time to either obtain evidence in support of his own position or to respond to Defendant's filings, this is both untrue and the direct result of Plaintiff's decisions.

Nonetheless, because Plaintiff's Objections contend that certain specific material facts are in dispute, the Court turns to the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), which provide the legal framework for Plaintiff's free exercise claim.[2] Although the Court will engage in a *Turner* analysis, as discussed *infra*, it appears to the Court that there is no challenge to the contraband policy itself which would require such an analysis. Rather, Plaintiff's claim appears to be grounded in a complaint of discriminatory enforcement of an otherwise penologically necessary policy, *i.e.* the prohibition of contraband in prison. The Court further makes clear that its whole analysis herein is premised on the assumption that the beads at issue are connected to a sincerely held religious belief that would confer on Plaintiff First Amendment protections.

---

[2] Although Plaintiff's Objections appear to also raise factual and legal arguments relevant to a retaliation claim and Fourteenth Amendment claim, pursuant to Judge Nealon's Memorandum Opinion and Order dated July 25, 2017 (Docs. 35, 36), Plaintiff's First Amendment free exercise claim is the sole remaining claim in this case. The Court also deems it necessary to note that Plaintiff's operative complaint does not include any claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which would require an analysis separate from *Turner*. *See Payne v. Doe*, 636 F.App'x 120, 124 (3d Cir. 2016) ("RLUIPA was passed to provide 'greater protection' for religious liberty than is provided by the First Amendment. In applying *Holt* [*v. Hobbs*, 135 S.Ct. 853 (2015), a Supreme Court case analyzing RLUIPA], courts must be careful not to import reasoning from cases such as *Turner* involving First Amendment rights.") (internal citation omitted).

> Preliminarily, it must be noted that:
>
> > the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. As we recently observed, incarceration almost always results in a narrowing, not a broadening, of constitutional protections. Although prison walls do not form a barrier separating prison inmates from the protections of the Constitution, inmates' First Amendment rights must in some respects be limited in order to accommodate the demands of prison administration and to serve valid penological objectives.

*Sutton v. Rasheed*, 323 F.3d 236, 252 (3d Cir. 2003) (internal citations and quotation marks omitted).

As explained in the R&R (Doc. 52, at 11-12), *Turner* sets forth four factors which must be evaluated when determining whether a prison regulation impinges on an inmate's constitutional rights or instead is reasonably related to legitimate penological interests: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether the prisoner has "alternative means of exercising the right"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) what alternatives to the prison regulation exist. *Turner*, 482 U.S. at 89-90.

"The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity." *DeHart v. Horn*, 227 F.3d 47, 59 (3d Cir. 2000). However, prison administrators need not choose the least restrictive means possible in

7

trying to further penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989). Further, although it is the prison official's burden to demonstrate a rational connection between the regulation or decision at issue and a valid penological interest, *Fontroy v. Beard*, 559 F.3d 173, 177 (3d Cir.2009), it is the burden of the plaintiff to disprove the validity of a prison regulation or practice, *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003)). *See also, Sharp v. Johnson*, 669 F.3d 144, 155-158 (3d Cir. 2012).

With respect to the first *Turner* factor – whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" – the Court agrees with the Magistrate Judge's analysis. (Doc. 52, at 12-15). When analyzing this factor, the Court must accord "great deference to the judgments of prison officials 'charged with the formidable task of running a prison.'" *Sutton*, 323 F.3d at 253 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987)). Although this first factor does not subsume the rest of the *Turner* inquiry, it is "'foremost in the sense that a rational connection is a threshold requirement.'" *Id.* (quoting *Wolf v. Ashcroft*, 297 F.3d 305, 310 (3d Cir. 2002)). While the prison official has the burden of demonstrating this *Turner* factor, "[t]his burden is slight, and in certain instances, the connection may be a matter of common sense." *Sharp*, 669 F.3d at 156.

Here, Plaintiff does not assert in his "request[s]" for summary judgment or his Objections to the R&R that he did not receive the confiscation policy at issue or that he was

8

not aware of this policy. Nor does Plaintiff argue that the beads were not contraband within the definition of the policy.[3] Instead, Plaintiff appears to argue that it is the specific and solitary application of the policy itself by Roskosci to Johnson which forms the basis for his purported constitutional claim. In addition, although Plaintiff vaguely implies that he believes that the policy may not be neutral, he does so by relying on Defendant Roskosci's purported statement that he was taking the beads because they did not have crosses. (*See generally,* Doc. 50). Plaintiff further alleges in his Objections that Defendant's actions were done as "harassment" and that Roskosci's "attempts to justify harassment by speaking of Luzern[e] county correctional facility rules [are] discriminatory on its face." (Doc. 57, at 9) (*see also, id.* at 12 (arguing that Defendant confiscated the beads in order to harass and discriminate against plaintiff)). Such arguments do not challenge the validity or reasonableness of the policy. Rather, they are better considered as support for a First Amendment retaliation claim and Fourteenth Amendment discrimination claim, both of which were previously dismissed.

Additionally, as explained by Magistrate Judge Carlson,

> Applying the four-part *Turner* test, courts have upheld facially neutral prison confiscation policies like those at issue here, stating that an inmate's "First Amendment right to free exercise of religion was not impermissibly impinged by the confiscation of his medal/necklace, because confiscation satisfied the

---

[3] It is undisputed that the policy at issue reads: "Inmates are not allowed to possess contraband (contraband is any item not lawfully permitted to be kept upon commitment, any item not (lawfully) obtained through the prison or any item altered or changed from original condition or purpose)." (Doc. 47, at ¶ 8). Here, not only does Plaintiff not argue that the confiscated items were not contraband within the definition of the policy, his Objections suggest that the items at issue were, in fact, "altered or changed from original condition or purpose". (*See* Doc. 57, at 8; *id.* at exhibit xx).

> legitimate and neutral purpose of protecting him, and he was not otherwise prevented from practicing his religion. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Sutton v. Rasheed*, 323 F.3d 236, 252-53 (3d Cir.2003)." *Piskanin v. Hammer*, 269 F. App'x 159, 162 (3d Cir. 2008). *See e.g., Dunn v. Sec'y Pennsylvania Dep't of Corr.*, 490 F. App'x 429, 431 (3d Cir. 2012) (upholding denial of religious runes and tarot cards); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008)(upholding confiscation of prayer rug).

(Doc. 52, at 12). Similarly, here, the policy prohibiting contraband items can legitimately be said to be premised on a concern about inmate and staff safety and prison security which present valid penological concerns unrelated to the suppression of any constitutionally protected expression. A prison official's determination of what policies and practices are necessary to ensure institutional security should be accorded great deference. *See e.g. Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Thus, while Defendant has demonstrated a rational connection between the regulation regarding contraband and a valid penological interest, *i.e.* safety and security of the prison, the plaintiff has failed to meet his burden of disproving the validity of the prison's regulation by showing any issues of material fact.

Therefore, for the aforementioned reasons as well as those set forth by Magistrate Judge, the first *Turner* factor weighs in favor of the defendant.

Plaintiff's Objections do not specifically address the second factor in *Turner*, which requires the factfinder to determine "whether there are alternative means of exercising the [asserted] right that remain open to prison inmates." *Turner*, 482 U.S. at 90. With respect to the second factor, "[w]hen other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Id.* (internal citations, quotation marks, and alterations omitted). Here, although Plaintiff contends that he "hold[s] a sincere religious belief in possessing and using the religious beads" (Doc. 57, at 5), he does not allege, or set forth any evidence to establish, that the absence of the beads prevented him from exercising his religious beliefs or that alternative means of exercising his religious rights were not available to him. At most, Plaintiff in passing states that he objects to the R&R's finding that the confiscation "did not unduly burden Johnson's exercise of his faith since he had other means of practicing his religion" because "Plaintiff answered [this] question[] in submission by Plaintiff 1-1-2018 opposing them" (Doc. 57, at 9). However, a review of Plaintiff's submission dated January 1, 2018 (filed on January 4, 2018) (Doc. 45) and the documents referenced therein (Docs. 40, 41), only serve to support Plaintiff's position that the beads are a part of his religious practices. Plaintiff's submissions do not create an issue of fact as to whether confiscation of the beads prevented him from practicing his religion or whether he had no other means of practicing his religion.

11

The third and fourth factors in *Turner* require the Court to determine the impact that an accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally and what alternatives to the prison regulation exist. Neither party has addressed these factors and the Court thus considers them neutral. Nonetheless, as previously discussed, the confiscation of contraband, which Plaintiff has not adequately disputed does not include his beads, serves a legitimate governmental interest which is rationally related to the regulation. Plaintiff has also not demonstrated a material dispute as to Defendant's assertion that alternative means of exercising his religious rights were available to him. A balancing of the *Turner* factors thus weighs in favor of a finding that Plaintiff's First Amendment right to free exercise of religion was not violated. *See Piskanin*, 269 F.App'x at 162 (finding that where the "confiscation satisfied the legitimate and neutral purpose of protecting him, and he was not otherwise prevented from practicing his religion", Plaintiff's First Amendment right to free exercise of religion was not impermissibly impinged by the confiscation of his medal/necklace).

Both in the application of *Turner*, and upon review of any other claim which Johnson may have pursuant to his First Amendment right to free exercise of religion, even affording Plaintiff every benefit of the doubt and granting him every favorable inference from the record, Plaintiff has not provided this Court with any evidence which would permit the denial of Defendant's motion for summary judgment. Specifically, Plaintiff, although prolific in his writing, limits his statements to conclusory generalities. He offers no specifics as to his

claim that religious articles or beads which have a "cross" on them are not confiscated as contraband while other similar but non-Christian articles are confiscated. Plaintiff only relies on a single incident wherein his beads were confiscated, and does not cite, or provide evidence, of a single example of a specific act of confiscation by Defendant of non-Christian prayer articles from any other inmate. Plaintiff provides no evidence by affidavit, declaration, or other document, that would offer support for his claim, and specifically that the prison confiscation policy is being selectively enforced by Roskosci against him due to his religion. Nor does Plaintiff identify with any specificity the time, date, or circumstances of the statement(s) that he attributes to Roskosci in connection with the confiscation of his religious beads.

Furthermore, Johnson has not made any argument, or presented any evidence, with respect to whether he made any attempt, through an application to prison officials or otherwise, for his beads to be deemed "lawfully permitted" within the meaning of the contraband policy. Here, Johnson is unable to establish that there was selective enforcement of the contraband policy in so much as prisoners with "crosses" on chains or beads were allegedly permitted to keep those items, whereas Plaintiff's non-Christian beads were not permitted, where he has not shown that he had tried to obtain permission to keep, or obtain, religious beads he claims are part of his religion. The lack of any statement or evidence that he made an application to lawfully possess these beads while incarcerated further prevents this Court from finding that Plaintiff has established a claim for trial.

Finally, the Court agrees with Magistrate Judge Carlson that, because "at the time of these events in April of 2015, courts had repeatedly sustained prison confiscation policies likes those at issue here, rejecting First Amendment free exercise challenges to those policies under the *Turner* test" (Doc. 52, at 18), even if Johnson did suffer a First Amendment violation, Defendant Roskosci is entitled to qualified immunity as Roskosci "could not have recognized that his actions in strictly enforcing this prison contraband confiscation policy would violate clearly established statutory or constitutional right of which a reasonable person would have known." (*id.* at 18-19) (internal quotation marks omitted).

### III. CONCLUSION

For the reasons set forth above, upon *de novo* review of the R&R (Doc. 52), the Court will adopt the R&R in its entirety, grant Defendant's motion for summary judgment, and, to the extent Plaintiff's "requests" can be deemed motions for summary judgment,[4] deny those motions.[5]

---

[4] The Court agrees with Magistrate Judge Carlson that Plaintiff's requests were "in effect, responses in opposition to th[e] defense summary judgment motion" (Doc. 52, at 2), and in any case, the "request[s]" do not conform to the rules required when filing a motion for summary judgment. However, to the extent that these requests can be considered motions for summary judgment, they will be denied.

[5] Plaintiff asserts that this Court never ruled on his "motion requesting that court alter or amend a judgment under Federal Rule of Civil Procedure 59". (Doc. 57, at 10). Although Plaintiff does not specify what document he is referring to, a review of the docket reveals that Plaintiff references Rules 59 and 60(b) in a document which also includes "exhibit one for Plaintiff's submissions from September 5, 2017" and a "Declaration and Amended Claim." (Doc. 40).

As a threshold issue, Plaintiff's "motion" is procedurally flawed. Rule 59(e), which controls a motion to alter or amend a judgment, is inapplicable where the order that a party seeks to have reconsidered is not a final judgment or order. *See Bausch & Lomb, Inc. v. Moria S.A.*, 222 F.Supp.2d 616, 669 (E.D. Pa. 2002); *Dayoub v. Penn–Del Directory Co.*, 90 F.Supp.2d 636, 637 (E.D.Pa.2000) ("neither Rule 59(e) nor 60(b) applies because the order [Defendant] seeks to have reconsidered is not a

14

A separate Order follows.

_____
Robert D. Mariani
United States District Judge

---

final judgment or order but rather an interlocutory decision. See *Davidson v. United States*, 1998 WL 314706, at *2 (E.D.Pa. June 15, 1998) (denial of partial motion for summary judgment is not a final judgment, order, or proceeding within Rule 60(b) but rather an interlocutory decision); 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civ.3d § 2715 at 264 (West 1998) ('the denial of a Rule 56 motion is an interlocutory order from which no appeal [to the court of appeals] is available until the entry of judgment following the trial on the merits')."). Further, "ordinarily, an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." *Carter v. City of Phila.*, 181 F.3d 339, 343 (3d Cir. 1999).

Even if the Court were to excuse the fact that Plaintiff's purported motion fails to meet the requirements necessary under the M.D. Pa. Local Rules to submit a motion, and somehow interpret this filing as a motion pursuant to Rules 59 and/or 60, Plaintiff's "Declaration and Amended Claim" is largely unrelated to the present action. Plaintiff's "Declaration and Amended Claim" requests a new trial in a state court case, argues that he did not receive a fair trial in that case and that his conviction was "illegal", and references a "petition [for] Habeas Corpus." (Doc. 40, at 3-4). The only arguably related allegations are that in 2016 an "officer targeted plaintiff and confiscated religious property without cause" and "wrote frivolous misconducts about cosmetics being contraband." (*Id.*).

In light of the contents of Plaintiff's "Declaration and Amended Claim" and related documents within that docket filing, even if the Court were to liberally construe Plaintiff's motion not as one for reconsideration or to alter or amend a judgment, but rather as a motion to file another amended complaint, the motion must be denied.